## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WILLIAM ANDERSON (#R-22868), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 CV 6765 |
| ) | |
| MIKE KELLY and DAN GALLAGHER, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Anderson (hereinafter "Plaintiff"), brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that on November 27, 2007, City of Chicago Police Detectives Mike Kelly and Dan Gallagher[1] violated his Fourth Amendment rights when he was arrested and his residence searched without a warrant. Defendants have moved for summary judgment and Plaintiff has declined to respond. For the reasons explained below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the pleadings and the Defendants' Local Rule 56.1 submission.[2] On November 18, 2007, Derrick Smith was shot and killed in the hallway of a Chicago Housing Authority residence located at 1936 W. Washington Boulevard. (Defs.' 56.1(a)(3) [42] ¶ 2.) Derrick Smith and his twin brother Erick Smith were confronted in the hallway on the first floor of the building by two men later identified as Plaintiff and Bennie Casey (also known as "Little B"). (Tr. of Test. of Erick Smith, Ex. B to Defs.' Mot. for Summ. J. [40], at 78-82.) Bennie Casey pointed a

---

[1] Plaintiff's Complaint incorrectly names Defendant Dan Gallagher as "Gallenger."

[2] Defendants provided Plaintiff with the appropriate LR 56.2 notice. *See Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). Plaintiff was granted four extensions of time by which to respond to Defendants' motion for summary judgment. The most recent extension granted Plaintiff till January 4, 2013 to respond to Defendants' motion. Plaintiff has neither filed a response nor moved for a further extension of time

gun at Erick Smith and ordered him out of the building.  (*Id.*)  Erick exited the building and realized his brother Derrick was no longer with him.  (*Id.* at 82-83.)  Erick reentered the building and saw Bennie Casey shoot his brother.  (*Id.* at 83-85.)

City of Chicago Police Homicide Detectives Mike Kelly and Dan Gallagher (collectively "Defendants") investigated the shooting.  (Defs.' 56.1(a)(3) ¶ 1.)  Erick Smith had witnessed the shooting, but, at that time, did not know the identity of the two men involved.  (Defs.' 56.1(a)(3) ¶¶ 2-3; Tr. of Test. of Erick Smith at 150.)  Erick Smith told Detective Kelly that Nina Boyd and a woman nicknamed "Turk," whom Defendants later identified as Tongula Ayers, might have information about his brother's murder.  (Defs.' 56.1(a)(3) ¶ 3.)  Detective Kelly spoke with Ms. Boyd, who told him–based on a description of the individuals provided by Erick Smith–that she believed she knew the two men involved in the murder.  (*Id.* ¶ 4.)  Ms. Boyd told Detective Kelly that she believed the two men were William Anderson and a man known by the nickname "Little B."  (*Id.*)

Detective Kelly ran a search through the Chicago Police Department data warehouse for photographs of men by the name of William Anderson.  (*Id.* ¶ 5.)  Detective Kelly showed the photographs to Ms. Boyd, and she identified Plaintiff as the William Anderson she believed matched the description of one of the two men involved in the murder of Derrick Smith.  (*Id.*)  Witnesses Erick Smith, Tongula Ayers, and Shanice Wright later identified Plaintiff in photo arrays.  (*Id.* ¶ 6.)

Plaintiff was released from Stateville Correctional Center on July 19, 2007.  At the time of Derrick Smith's murder, and the subsequent arrest and search Plaintiff now challenges, Plaintiff was on parole under the terms of a mandatory supervised release agreement ("MSR").  (Aff. of Parol Agent Charles Victor (hereinafter "Victor Aff."), Ex. C to Defs.' Mot. for Summ. J., ¶ 2; see MSR, Ex. C-2 to Defs.' Mot. For Summ. J.)  Under the terms of his MSR, Plaintiff consented to the search of his person, property and residence, and he was required to submit to in-person visits from his parole agent.  (MSR ¶¶ 4, 10.)

On November 22, 2007, Detective Gallagher contacted Plaintiff's parole agent, Charles

Victor, and advised Agent Victor that Plaintiff had been identified as involved in the murder of Derrick Smith. (Victor Aff. ¶ 4.) On November 27, 2007, Agent Victor notified Detective Gallagher that he had a monthly house check with Plaintiff scheduled later that day. (*Id.* ¶ 5.) Defendants met Agent Victor at Plaintiff's residence. (*Id.* ¶¶ 6-7.) Defendants did not have a warrant for Plaintiff's arrest or to search his residence, but when Plaintiff answered Agent Victor's knock on the door, Defendants placed Plaintiff under arrest for his alleged involvement in Derrick Smith's murder. (Defs.' Answer [39] ¶¶ 2, 4; Victor Aff. ¶ 7; see Parole Violation Report, Ex. C-1 to Defs.' Mot. for Summ. J.) Plaintiff claims that Defendants searched his residence. (Pl.'s Compl. [1], at 4.) Defendants deny this (Defs.' Answer ¶¶ 3-4), and Agent Victor confirmed that although he searched Plaintiff's bedroom pursuant to the terms of the MSR, Defendants did not participate in any search of the residence. (Victor Aff. ¶ 10.) Agent Victor did not discover anything during his search. (*Id.* ¶ 9.)

In subsequent in-person line-ups, witnesses Smith, Ayers, and Wright identified Plaintiff as being involved in Derrick Smith's murder. (Defs.' 56.1(a)(3) ¶ 11.) Thereafter, Plaintiff was charged with first-degree murder, pursuant to 750 ILCS 5.0/9-1-A-1. (See Certified Statement of Conviction/Disposition (hereinafter "Statement of Disposition"), Ex. D to Def.s' Mot. for Summ. J.) On October 26, 2009, Plaintiff filed the complaint in this case, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Fourth Amendment rights when he was arrested and his residence searched on November 27, 2007, without a warrant. (See Pl.'s Compl.) Plaintiff was convicted on May 19, 2010; his case is currently on appeal. (See Statement of Disposition.)

## DISCUSSION

Plaintiff's complaint alleges that he was unlawfully arrested and his residence illegally searched. (See Pl.'s Compl.) Plaintiff was convicted of the murder, so any claim for damages for false arrest may ultimately be barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Plaintiff's conviction is on appeal, and the pendency of the state court appeal militates in favor of staying a

civil rights case where the federal claims "may also be involved in the underlying state court criminal prosecution," and "are potentially subject to adjudication in his appeal to the state supreme court." *Simpson v. Rowan*, 73 F.3d 134, 137–39 (7th Cir.1996).  Here, Plaintiff's federal claim regarding the legality of his arrest raises constitutional issues that are potentially subject to adjudication during the appeal of his criminal conviction.  As such, the court will not reach the merits of Plaintiff's unlawful arrest claim to avoid any interference with the pending state court proceedings.  Plaintiff's illegal search claim, however, can be decided now because no evidence implicating Plaintiff in the murder of Derrick Smith was recovered during the challenged search, and thus, there is no risk that resolution of this claim would interfere with Plaintiff's appeal.

**Illegal Search**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  In considering a motion for summary judgment, the court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009).

Initially, the court notes that there is no evidence that the named Defendants themselves participated in the search of Plaintiff's residence on the date of the arrest.  Rather, the undisputed evidence establishes that it was Plaintiff's parole agent who searched Plaintiff's bedroom at the time of the arrest.  (Victor Aff. ¶ 10.)  Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (internal citation and quotation omitted).  Accordingly, Plaintiff's claim of illegal search fails.

4

Even assuming Defendants had participated in the search, however, it would not have been a violation of Plaintiff's Fourth Amendment rights. The validity of a search under the Fourth Amendment depends upon its reasonableness, which "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (citation omitted). Persons on parole, probation, and supervised release, simply by virtue of their status, "do not enjoy the absolute liberty to which every citizen is entitled." *Id.* at 848-49 (citation and internal quotation omitted). In *Samson*, the Court concluded that the Fourth Amendment does not prohibit the warrantless search of a person on parole. In Plaintiff's case, moreover, the MSR agreement explicitly states that Plaintiff was subject to search. (MSR ¶¶ 4, 10.) That agreement further undermines any claim to an expectation of privacy. *See Samson*, 547 U.S. at 849.

In *People v. Wilson*, the Illinois Supreme Court extended the rationale of *Samson* to the situation presented in this case. Affirming a conviction that rested in part on evidence seized in a warrantless search of the defendant's bedroom, the *Wilson* court held unanimously that neither probable cause nor reasonable suspicion was required for such a search because the defendant's "status as a parolee, coupled with the plain language of his search condition, reduced his expectation of privacy." 228 Ill.2d 35, 52, 885 N.E.2d 1033, 1043 (2008). Federal district courts in this state have reached similar conclusions. *See United States v. Woodland*, 607 F. Supp.2d 904, 909-11 (C.D. Ill. 2009) (search of a parolee who was sitting in a passenger seat of a parked car); *United States v. Perkins*, No. 05-CR-30137, 2006 WL 3718048 at *3-4 (S.D. Ill. Dec. 15, 2006) (holding that suspicionless search of parolee's residence was constitutional). In contrast, the court in *United States v. Williams*, 702 F. Supp.2d 1021 (N.D. Ill. 2010) suppressed evidence seized in the warrantless search of a parolee's apartment, where the officer who conducted that search was unaware that the person being searched was on parole. *Williams*, 702 F. Supp.2d at 1029-30,

citing *Samson*, 547 U.S. at 856 n.5 ("an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee."). Agent Victor, and the Defendants in this case, were aware at the time of the house visit and arrest that Plaintiff was on mandatory supervised release. (Victor Aff. ¶¶ 4-6.) That knowledge defeats Plaintiff's claim regardless of which of the officers conducted the search. As the *Samson* court observed, "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson*, 547 U.S. at 856.

**Qualified Immunity**

Defendants also argue that they are shielded from liability based on qualified immunity. As the court has determined that Plaintiff's residence was not searched unlawfully, this argument requires only brief discussion. Qualified immunity shields an officer from liability unless: (1) the officer violated the plaintiff's constitutional rights; and (2) those rights were clearly established when the officer acted. *Moss v. Martin*, 614 F.3d 707, 709 (7th Cir. 2010). "Qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful." *Gonzales*, 578 F.3d at 540 (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). "The doctrine allows 'ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gonzales*, 578 F.3d at 540 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

"Although qualified immunity is an affirmative defense, once raised, it becomes the plaintiff's burden to defeat it." *Purvis v. Oest*, 614 F.3d 713, 717-18 (7th Cir. 2010) (citation omitted). Plaintiff "bears the burden of showing that the constitutional right allegedly violated was clearly established at the time of the challenged conduct." *Id.* (citation omitted). Plaintiff could also "prevail by showing that the conduct at issue is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Id.* at 717-718 (citation and internal quotation omitted). Here, Defendants knew that Plaintiff was on parole and subject to an MSR. For the reasons

6

explained in the preceding section, Plaintiff did not have a clearly established constitution right to be free from search under the circumstances present in this case. Further, the court cannot conclude that reasonable officers in the Defendants' positions would have believed that their conduct violated Plaintiff's constitutional rights. Accordingly, had the officers participated in the search, they would be shielded from liability based on qualified immunity.

## **CONCLUSION**

Defendants' motion for summary judgment [41] is granted as to Plaintiff's illegal search claim. Defendants' motion is denied, without prejudice, as to Plaintiff's remaining claim of unlawful arrest. This matter is stayed pending the outcome of the state proceedings.

ENTER:

Dated: February 4, 2013

_____
REBECCA R. PALLMEYER
United States District Judge